**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOHN DEL GALLEGO, | No. 15-15294 |
| Plaintiff-Appellant, | D.C. No. 3:13-cv-04518-VC |
| v. | MEMORANDUM* |
| WELLS FARGO & COMPANY LONG TERM DISABILITY PLAN; METROPOLITAN LIFE INSURANCE COMPANY, | |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Northern District of California
Vince G. Chhabria, District Judge, Presiding

Submitted February 14, 2017**
San Francisco, California

Before: SILER,*** TASHIMA, and HURWITZ, Circuit Judges.

---

\*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*      The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

\*\*\*      The Honorable Eugene E. Siler, Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

In this ERISA action, John Del Gallego alleges that the Wells Fargo & Company Long Term Disability Plan (the "Plan") and the Plan insurer, Metropolitan Life Insurance Company ("MetLife"), improperly offset Del Gallego's permanent partial disability workers' compensation ("PPD") benefits against his Plan long-term disability benefits. The district court granted summary judgment to the Plan and MetLife. We affirm.

1. The Plan, which incorporates a group Certificate of Insurance issued by MetLife, provides that long-term disability benefits are "reduced by Other Income Benefits." The Plan definition of "Other Income Benefits" includes "Workers' Compensation or a Similar Law," and states that "[p]eriodic benefits and substitutes and exchanges for periodic benefits will be counted."

2. Courts interpret ERISA policy terms in the "ordinary and popular sense as would a person of average intelligence and experience." *Babikian v. Paul Revere Life Ins. Co.*, 63 F.3d 837, 840 (9th Cir. 1995) (quoting *Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1441 (9th Cir. 1990)). The plain language of the Plan provides that a covered employee's long-term disability benefits will be reduced by periodic workers' compensation benefits received by the employee, and the district court therefore did not err in interpreting the Plan.

3. Del Gallego argues that "other income benefits" are only those paid to compensate for lost wages, and therefore include only temporary disability

payments. But, the case upon which Del Gallego relies, *Russell v. Bankers Life Co.*, 120 Cal. Rptr. 627 (Ct. App. 1975), involved an insurance contract defining "income from other sources" as "any payment . . . under a *Workmen's Compensation Act . . .* providing benefits for loss of time from employment." *Id.* at 629-630, 633-34. Because the Plan does not limit "Other Income Benefits" to those providing benefits for loss of time from employment, *Russell* is inapposite.

4. Del Gallego argues that because the Plan requires proof of "the amount attributable to lost income" when an employee receives "Other Income Benefits in a lump sum instead of in monthly payments," reductions must be limited to the portion of the lump sum payment attributable to lost income. But, the provision he cites only applies to lump sum payments, not to periodic benefits, and the Plan did not set off the lump sum workers' compensation settlement that Del Gallego received against his Plan benefits.

5. Del Gallego also argues that the phrase "workers' compensation" is ambiguous because a reasonable person would not anticipate that payments "intended to provide for the future of the injured worker" would be offset from disability insurance benefits. But, the language of the Plan unambiguously covers all workers' compensation benefits. *See Ott v. Workers' Comp. Appeals Bd.*, 173 Cal. Rptr. 648, 650-51 (Ct. App. 1981) (finding no ambiguity when Plan stated "payments required by Workmen's Compensation Laws" offset Plan benefits); *see*

3

*also Peterson v. Am. Life & Health Ins. Co.*, 48 F.3d 404, 411-12 (9th Cir. 1995) (rejecting application of reasonable expectations doctrine when insurance policy was "unambiguous and conspicuous").

6. Del Gallego argues that, even if his weekly PPD benefits were for loss of future earning capacity, these payments are not "income." This argument is at odds with precedent, *see Jones & Laughlin Steel Corp v. Pfeifer*, 462 U.S. 523, 533 (1983) (describing impaired earning capacity as "diminution in…stream of income"), and the Plan language, which defines workers' compensation benefits as "Other Income."

7. Del Gallego argues that the term "periodic benefits" is facially ambiguous. To the contrary, a "person of average intelligence and experience," *Babikian*, 63 F.3d at 840 (quoting *Evans*, 916 F.2d at 1441), would understand "periodic benefits" to include benefits paid in weekly increments. *See Periodic*, MERRIAM-WEBSTER.COM (defining "periodic" as "occurring or recurring at regular intervals"). And, because the Plan has specific language separately exempting lump sum payments from the setoff, it is not possible to interpret "periodic payments" as including a lump sum payment.

**AFFIRMED.**